IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEROME CALHOUN, # 280231,           )
                                    )
        Petitioner,                 )
                                    )
        v.                          )        Civil Action No. 2:14cv1228-WKW
                                    )                    (WO)
LEON FORNISS, *et al.*,             )
                                    )
        Respondents.                )

### RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter concerns a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by

Alabama inmate Jerome Calhoun ("Calhoun").  Doc. No. 1.[1]

## I.   BACKGROUND

On August 18, 2011, a Montgomery County jury found Calhoun guilty of sexual abuse of

a child less than 12 years old, in violation of § 13A-6-69.1, Ala. Code 1975.  On September 16,

2011, the trial court sentenced Calhoun to 10 years in prison.

Calhoun appealed to the Alabama Court of Criminal Appeals, where his appellate counsel

filed a no-merit, "*Anders* brief"[2] stating he could find no meritorious issues for review.  Doc. No.

7-2.  Calhoun was afforded an opportunity to submit *pro se* issues for appellate review, but he

submitted no issues.  *See* Doc. No. 7-3.  On August 10, 2012, by unpublished memorandum

opinion, the Alabama Court of Criminal Appeals affirmed Calhoun's conviction and sentence.

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk of Court in this civil action.
Page references are to those assigned by CM/ECF.

[2] *Anders v. California*, 386 U.S. 738 (1967).

Doc. No. 7-4.  Calhoun did not seek rehearing, and a certificate of judgment was entered on August 29, 2012.  Doc. No. 7-5.

On April 5, 2013, Calhoun, through counsel, filed a petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure in which he argued that his trial counsel rendered ineffective assistance by (1) failing to call two witnesses − Clifton Adams and Albert Adams − to corroborate his trial testimony and (2) failing to call certain character witnesses − two of his sisters − to testify on his behalf.  Doc. No. 7-7 at 5-9; *also id*. at 14-17.  On September 6, 2013, the trial court held an evidentiary hearing on Calhoun's claims.  *Id*. at 31-76.  On October 1, 2013, the trial court entered an order denying his Rule 32 petition.  *Id*. at 21-22.

Calhoun appealed, essentially reasserting his claim that his trial counsel was ineffective for failing to call Clifton Adams and Albert Adams to corroborate his trial testimony.[3]  Doc. No. 7-8. Calhoun also characterized this claim in part as one alleging counsel's failure to conduct an adequate investigation into procuring favorable testimony from the Adamses.  *See id*. at 16-17, 26-36.

On April 25, 2014, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals affirmed the trial court's judgment denying Calhoun's Rule 32 petition, holding that Calhoun had failed to demonstrate ineffective assistance of counsel under the standards in *Strickland v. Washington*, 466 U.S. 668 (1984).  Doc. No. 7-9. Calhoun applied for rehearing, which was overruled.  Doc. Nos. 7-10 and 7-11.  He then petitioned the Alabama Supreme Court for a writ of certiorari.  The petition for certiorari was denied on October 10 2014, and a certificate of judgment was entered that same date.  Doc. Nos. 7-12 and 7-13.

---

[3] On appeal, Calhoun did not pursue his claim regarding his trial counsel's failure to present character testimony from his sisters.

Calhoun initiated this federal habeas action on December 17, 2014, by filing a § 2254 petition reasserting his claim that his trial counsel was ineffective for failing to call Clifton Adams and Albert Adams to corroborate his trial testimony and for failing to conduct an adequate investigation into procuring favorable testimony from these witnesses.  *See* Doc. No. 1 at 5-6; Doc. No. 2 at 13-25.

The respondents answer that Calhoun's claims were properly adjudicated on the merits by the state courts and that he is not entitled to federal habeas relief.  Doc. No. 7.  After careful review of the § 2254 petition, the parties' submissions, and the record in this case, the undersigned finds that Calhoun's petition should be denied without an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.   Scope of Habeas Review for Claims Adjudicated on Merits by State Courts

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief."  *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010).  To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 404-05 & 412-13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially

indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404-06; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407. "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or ... could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011) (internal citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.   *Strickland* Standard for Claims of Ineffective Assistance of Counsel**

The Alabama Court of Criminal Appeals applied the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), in determining that the Rule 32 court correctly denied Calhoun relief on his claims of ineffective assistance of counsel. *See* Doc. No. 11-9 at 3-7. *Strickland* sets forth the clearly established federal law on this issue*, see Pinholster,* 536 U.S. at 189, and requires that a petitioner alleging ineffective assistance of counsel establish that his counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. *Strickland*, 466 U.S. at 687.

> The elements to be considered are as follows:
>
> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. Thus, a petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Van Poyck v. Florida Dep't of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)).

An ineffective assistance of counsel claim is examined under the "totality of the circumstances." *House v. Balkcom*, 725 F.2d 608, 615 (11th Cir.1984). An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight. *Messer v. Kemp*, 760 F.2d 1080, 1088 (11th Cir. 1985). A federal court must apply a

"heavy measure of deference to counsel's judgments." *Singleton v. Thigpen*, 847 F.2d 668, 670

(11th Cir. 1988) (quoting *Strickland*, 446 U.S. at 691).

## C.   Calhoun's Claim

Calhoun contends that his trial counsel rendered ineffective assistance by failing to call his

cousins, Clifton Adams and Albert Adams, to corroborate his trial testimony denying commission

of the offense.  *See* Doc. No. 1 at 5-6; Doc. No. 2 at 13-25.  According to Calhoun, the Adamses

were willing and available to testify at trial that they were at the residence when Calhoun's acts

were alleged to have occurred, and they never saw Calhoun have any contact with the minor victim

and never observed or heard anything to indicate Calhoun had done anything inappropriate to the

victim.  Doc. No. 2 at 18-25.  In part, Calhoun frames his ineffective-assistance claim as one

alleging that his trial counsel performed deficiently by failing to conduct an adequate investigation

into procuring favorable eyewitness testimony from the Adamses.  *See* Doc. No. 1 at 5; Doc. No.

2 at 13-25.  Calhoun contends that by failing to conduct an adequate investigation into procuring

such testimony and by failing to call the Adamses to testify, his trial counsel failed to subject the

prosecution's case to meaningful adversarial testing.  Doc. No. 2 at 16.

In its order denying Calhoun Rule 32 relief on his claims of ineffective assistance of

counsel, the trial court made the following findings:

> This Court held an evidentiary hearing on the Rule 32 Petition on September 6,
> 2013.  Petitioner was present at the proceeding and was represented by counsel.
> Petitioner called four witnesses, two of whom were present at the house with the
> Petitioner and the Victim in this case during the incident.  Clifton Adams and Albert
> Adams testified that the were separated by a kitchen counter bar from the Petitioner
> and the Victim during the day in question, and were looking [in] another direction
> and did not hear anything unusual.  Albert Adams testified he was a cousin to the
> Petitioner, and Clifton Adams testified he, too, was a cousin to the Petitioner, as
> well as stepfather to the Victim in the case.  Petitioner also called his sisters, Ms.
> Tippett and Ms. Calhoun, as witnesses.  They testified that they never had problems
> from Petitioner around their minor children.

The State of Alabama called as a witness Petitioner's counsel at trial, the Honorable Deborah Nickson.  She testified that she attempted to contact, through Petitioner, both Clifton Adams and Albert Adams prior to trial to determine what, if any, relevant testimony they would provide at trial.  According to her testimony, Clifton Adams indicated to Petitioner that he did not want to get involved and would not speak to Ms. Nickson.  Albert Adams personally met with Ms. Nickson and told her he did not want to be involved.  Ms. Nickson testified that she does not put a witness on the stand at trial if she does not know what he or she will say, which is why she did not call either Clifton Adams or Albert Adams as witnesses.  Furthermore, she said she did not have Petitioner's sisters testify at trial because she did not want to open the door to character evidence.

The Alabama Court of Criminal Appeals has held that "[t]he decision to call or not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel.  It is not our function to second-guess the strategic decisions made by counsel.  Such strategic decisions 'are virtually unassailable.'" *Slaton v. State*, 902 So. 2d 102 at 124 (Ala. Crim. App. 2003) (internal citations omitted).

After hearing the testimony of the witnesses, it is the finding of this Court that Petitioner's trial counsel exercised her discretion in the direction of her trial strategy and did not deny Petitioner effective assistance of counsel by failing to call additional witnesses at trial.

Doc. No. 7-7 at 21-22.

In affirming the trial court, the Alabama Court of Criminal Appeals identified *Strickland v. Washington*, 466 U.S. 668 (1984),  as the controlling law on claims of ineffective assistance of counsel.  *See* Doc. No. 7-9 at 2.  Holding that the trial court's findings were supported by the record, the appellate court affirmed the trial court's judgment.  *Id*. at 3.

At the evidentiary hearing on Calhoun's Rule 32 petition, Calhoun's trial counsel Deborah Nickson testified that Calhoun told her that, on the evening in question at the residence where the offense allegedly occurred, Clifton Adams was sitting on a living room sofa watching television and Albert Adams was sitting on a love seat in the living room with his back to the breakfast bar and kitchen area.  Doc. No. 7-7 at 56-57.  The breakfast bar separated the kitchen from the living room.  Calhoun and the victim were sitting at a table in the kitchen playing cards when the incident

allegedly took place.[4]  *Id*. at 57.  Based on the layout of the residence, if someone were watching

the television from either the sofa or love seat, he would face away from the kitchen area.  *Id*. at

57-58.  From her discussion with Calhoun, it was Nickson's understanding that both Clifton

Adams and Albert Adams were facing away from the kitchen area when the incident took place.

*Id.*

When questioned about her decision not to call the Adamses to testify at Calhoun's trial,

Nickson explained:

> A.   Okay.  When Mr. Calhoun came to me, he did share with me – by inquiry, I asked who was there.  He did say A.J. [Albert] and Clifton was there.
>
> Then I asked him for the layout of the room, tell me where they were and if they could offer any testimony to help him in this case.
>
> What I always do, I always ask my client to make the first contact with the witness to see if he would testify on his behalf.
>
> Mr. Calhoun did report to me that I think it was Clifton – actually, he just shut down.  He would not correspond with them.  He did not want to be involved.  That was the stepfather to the minor child.
>
> And then I focused on A.J.  As a matter of fact, A.J. came to my office to pay some attorney fees even after learning through Mr. Calhoun – and we even sat there at my desk in the office.
>
> I always, if I make contact with a potential witness, let my client hear, especially if it's hostile.  A.J. refused to participate or cooperate in this case.
>
> Q.   When you say refused to participate, what do you mean?
>
> A.   He wouldn't provide any information.  He said he didn't want to get involved.
>
> Q.   He told you that explicitly?

---

[4] According to Clifton Adams, from the sofa where he was seated, he could hear Calhoun and the victim talking in the kitchen, engaging in "normal chatter."  Doc. No. 7-7 at 39.  He stated he did not hear or see anything out of the ordinary occur between the two.  *Id*.  However, he stated he could not see into the kitchen area until he stood up, at the end of the evening.  *Id*. at 39-41.  Albert Adams's hearing testimony was substantially similar to that of Clifton's.  *Id*. at 42-45.

A.   Yes.  Now, A.J. came to the office.  As a matter of fact, he came and paid some attorney's fees.  I talked to him face to face.  He said again he would not get involved.

....

He said he didn't want to get involved.  He was very close to Clifton, and he was very close to his uncle, the Defendant.

Q.   Okay.  So your policy is to ask the client to make the first contact to the witness.  And so you asked Mr. Calhoun to reach out to Clifton.  And I guess – did Mr. Calhoun report to you that Cliff didn't want to talk about it?

A.   That is correct.

Q.   So you never spoke to Clifton personally.

A.   No.  We tried to call him, but there was no response.

Q.   Okay.  But you were able to speak personally to A.J. or Albert?

A.   That is correct.

Q.   And he told you that he didn't want to have anything – to be involved.

A.   That's right.

Q.   Did you at that point issue a subpoena for him and call him to the witness stand?

A.   No, I did not.

Q.   Why not?

A.   Basically, if I don't know what a witness will say, I will not subpoena them and especially if it is a witness that my client gives me the name.  If I don't know what that witness is going to say, if it could be detrimental to my client, then I don't subpoena the witness.

....

Q.   What about – what did you know about the Defendant drinking that evening?

A.   Again, that was a decision that I made even concerning A.J. which there was drinking going on at the house.  Mr. Calhoun said there was drinking and that he had become intoxicated.  He was intoxicated during the period of time that he was at the table with the minor child.

Q.   And, Ms. Nickson, have you taken other cases to trial before?

A.   Yes, I have.

Q.   Okay.  And how many years have you been practicing law?

A.   Nearly 20.

Q.   And so your decision to not call family members, to not call Clifton Adams or Albert aka A.J. Adams, that was part of your trial strategy in this case,

A.   That is correct.

Q.   Based upon your experience and training and education.

A.   That is correct.  The evidence that I was looking for in this case to help Mr. Calhoun was to see if anybody, even A.J. or Mr. Clifton, to see did they pass through the kitchen area.

Now − and I guess even today, hindsight, just listening to Mr. Clifton, definitely it would have been detrimental to even try to call him for trial because, based on the information I got from Mr. Calhoun, no one entered the kitchen area while he was there with the minor child.

He stated that he was seated at the table.  The evidence in this case − the minor child alleged that it occurred while they were seated.

And that's what we focused on in the trial strategy.  That there was a breakfast bar that separated the family room area and the kitchen where the Defendant and minor child were seated and that it was not in view.  If Clifton was seated on the sofa and A.J. on the love seat and the back of that love seat hit the back of his head would have been to the Defendant and the minor child.

Doc. No. 7-7 at 58-63.

Nickson's testimony at the Rule 32 hearing reflects that she considered any potential testimony from the Adamses to have limited exculpatory value, since her understanding of the layout of the residence and the position of the witnesses (learned through her discussion with

10

Calhoun) indicated that the witnesses were looking in a different direction when the incident allegedly took place.  More importantly, however, Nickson learned through her discussions with Calhoun and with Albert Adams that both Clifton Adams and Albert were unwilling to participate in the case.[5]  Thus, she could not count on the Adamses to provide any testimony – let alone favorable testimony – if she subpoenaed them and called them to the stand.  Indeed, she could have been justifiably concerned, in light of their refusal to cooperate, that the Adamses would provide testimony damaging to her client.  Because of these considerations, it was professionally reasonable for Nickson to eschew calling the Adamses to testify.  Nor was Nickson's investigation into procuring testimony from the Adamses professionally unreasonable.  Nickson's testimony reflects that she knew of these witnesses and understood the general nature of the facts about which they could testify, but that she reasonably concluded she could not count on their cooperation or confidently expect that they would provide testimony that helped her client.

Strategic choices of counsel made after thorough investigation of the law and facts relevant to plausible options are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  *Adams v.*

---

[5] Nickson's testimony at the Rule 32 hearing that Albert Adams told her in a face-to-face meeting that he would not get involved in Calhoun's trial conflicted with Albert's testimony at the hearing that no one contacted him before the trial to ask him questions or to discuss his testifying.  *See* Doc. No. 7-7 at 43.  The trial court's order denying the Rule 32 petition reflects that the trial court credited Nickson's testimony that Albert personally met with her and told her he did not want to be involved.  This was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2).  Calhoun has not rebutted the presumption of correctness afforded to this determination of fact "by clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1).

*Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).  *See also, e.g., Dingle v. Secretary for Dept.*

*of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007).

> [A] court must not second-guess counsel's strategy.  *Waters [v. Thomas*], 46 F.3d [1506,] at 1518-19 [(11th Cir. 1995)] (en banc).  By "strategy," we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client.  For example, calling some witnesses and not others is "the epitome of a strategic decision."  *Id*. at 1512 (en banc); *see also id*. at 1518-19 (en banc); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (stating that reliance on line of defense to exclusion of others is matter of strategy).

*Chandler v. United States,* 218 F.3d 1305, 1314 n.14 (11th Cir. 2000).

Here, for the reasons discussed above, the decision by Calhoun's trial counsel not to call

the Adamses to testify fell within the wide range of reasonable professional assistance.  This

strategy choice was not "so patently unreasonable" that no competent lawyer would have chosen

it.  *Adams*, 709 F.2d at 1145.  *See United States v. Gallego*, 944 F.Supp. 309, 317 (S.D.N.Y.1996)

(rejecting ineffective-assistance-of-counsel claim for failure to call witness where counsel learned

that witness did not wish to cooperate with defense).

The state court correctly identified *Strickland* as the controlling law and properly applied

it to Calhoun's ineffective-assistance-of-counsel claim.  Because the state court ruled on the merits

of Calhoun's ineffective-assistance-of-counsel claim, this court's § 2254 review under *Strickland*

is another step removed from the original analysis, or as the Supreme Court puts it, "doubly

deferential."  *Burt v. Titlow*, ___ U.S. ___, ___, 134 S.Ct. 10, 13 (2013) (quotation marks and

citation omitted); *see Tanzi v. Sec'y, Florida Dep't of Corr.*, 772 F.3d 644, 652 (11th Cir. 2014)

(quoting *Burt*).  The state court decision was neither contrary to nor an unreasonable application

of clearly established federal law, and it did not involve an unreasonable determination of the facts

in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). Consequently, Calhoun is not entitled to federal habeas relief.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner. The petitioner is DIRECTED to file any objections to this Recommendation on or before February 23, 2017. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 9th day of February, 2017.

  /s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE